UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>NORMAN ROUILLARD,<br><br>Defendant. | 5:07-CR-50066-01-KES<br><br>ORDER DENYING MOTION FOR RELIEF UNDER THE FIRST STEP ACT |

Defendant, Norman Rouillard, filed a motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i) and requests appointment of counsel. Docket 33; Docket 34. Plaintiff, the United States of America, opposes the motion. Docket 38. For the following reasons, the defendant's motion for compassionate release is denied and his request for counsel is denied as moot.

## BACKGROUND

On July 2, 2007, Rouillard pled guilty to carjacking in violation of 18 U.S.C. § 2119(a)(1). Docket 22; Docket 24 at 1. On August 27, 2007, the court sentenced Rouillard to 260 months in custody followed by five years of supervised release. Docket 30 at 2-3. His projected date of release is April 19, 2027. *See Find an inmate.*, Fed. Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited Mar. 3, 2022).

Rouillard is incarcerated at USP Florence ADMAX, an administrative security U.S. penitentiary in Florence, Colorado. *See id.; USP Florence ADMAX*, Fed. Bureau of Prisons, https://www.bop.gov/locations/institutions/flm/ (last visited Mar. 3, 2022). The total population at USP Florence ADMAX is 343 persons. *Id.*

In support of his motion, Rouillard cites the current COVID-19 pandemic, his mental health disorder, and his rehabilitation efforts as circumstances that warrant release from custody under the First Step Act. Docket 33; Docket 37 at 1319. Rouillard submitted an Inmate Request to Staff form requesting compassionate release on November 18, 2021. Docket 37 at 1319. On December 3, 2021, the warden denied his request. *Id.* at 1317-1318; Docket 33-1 at 1-2. Consequently, Rouillard filed a pro se motion seeking compassionate release under the First Step Act. Docket 33.

## DISCUSSION

Because sentences are final judgments, a court ordinarily "may not modify a term of imprisonment once it has been imposed[.]" 18 U.S.C. § 3582(c). In 2018, Congress passed the First Step Act (FSA). Pub. L. No. 115-391, 132 Stat. 5194 (2018). In pertinent part, the FSA amends 18 U.S.C. § 3582(c)(1)(A) to permit incarcerated defendants in certain circumstances to file motions with the court seeking compassionate release. Compassionate release provides a narrow path for defendants with "extraordinary and compelling reasons" to leave prison early. 18 U.S.C. § 3582(c)(1)(A)(i). Such a reduction in sentence must take into consideration the 18 U.S.C. § 3553(a) sentencing factors and be consistent with applicable policy statements issued by the Sentencing Commission. 18 U.S.C. § 3582(c)(1)(A).

The Sentencing Commission's policy statement, which was adopted before the FSA was passed, requires both "extraordinary and compelling reasons" to warrant a sentence reduction and that the defendant not pose a

2

danger to the safety of others." USSG § 1B1.13(1)-(2) (Nov. 2018). The burden to establish that a sentence reduction is warranted under 18 U.S.C. § 3582(c) rests with the defendant. *See United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016).

Rouillard argues that the global COVID-19 pandemic, his mental health disorder, his rehabilitation efforts, and the current conditions of USP Florence ADMAX satisfy the "extraordinary and compelling reasons" standard under 18 U.S.C. § 3582(c)(1)(A)(i). Docket 33; Docket 37 at 1319.

I. **Administrative Exhaustion**

Previously, only the BOP Director had the authority to bring a compassionate release motion on a defendant's behalf. With the enactment of the FSA, however, Congress has now permitted courts to grant compassionate release on motions filed by defendants "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier...." 18 U.S.C. § 3582(c)(1)(A).

On November 18, 2021, Rouillard submitted an Inmate Request to Staff form citing COVID-19, his mental health, and his rehabilitation efforts. Docket 37 at 1319. On December 3, 2021, the warden denied his application. *Id.* at 1137-1138; Docket 33-1 at 1-2. Having presented his request to the warden and being denied, and hearing no objection from the United States, the court will presume Rouillard has satisfied the administrative exhaustion requirement and will review the matter

on the merits.[1]

## II. Extraordinary and Compelling Reasons

The Sentencing Commission was directed by Congress to describe what "should be considered extraordinary and compelling reasons" for compassionate release and fashion "the criteria to be applied and a list of specific examples." *See* 28 U.S.C. § 994(t). The Sentencing Commission did so by limiting "extraordinary and compelling reasons" to four categories. USSG § 1B1.13, cmt. n.1(A)-(C) (2018). The four categories pertain to a defendant's (1) terminal illness, (2) debilitating physical or mental health condition, (3) advanced age and deteriorating health in combination with the amount of time served, and (4) compelling family circumstances. *Id.* A fifth catch-all category also exists for an "extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)" as determined by the BOP. USSG § 1B1.13, cmt. n.1(D).

The court has detailed the governing law and the analysis it uses when confronted with a compassionate release motion in many previous orders. *E.g., United States v. Shields*, 3:07-CR-30106-01-KES, 2021 WL 765001, at *2-3 (D.S.D. Feb. 26, 2021); *United States v. Muhs*, 4:19-CR-40023-02-KES, 2021 WL 534517, at *2-3 (D.S.D. Feb. 12, 2021); *United States v. Adame*, 4:18-CR-40117-05-KES, 2020 WL 7212096, at *2-3 (D.S.D. Dec. 7, 2020); *United States v. Nyuon*, 4:12-CR-40017-

---

[1] The warden's response states that if Rouillard is not satisfied with the decision, he may commence an appeal through the administrative remedy process within 20 days of the receipt of the response. Docket 33-1 at 1-2; Docket 37 at 1137-1138. There is no indication that Rouillard appealed the decision administratively.

01-KES, 2020 WL 7029873, at *2-3 (D.S.D. Nov. 30, 2020). The court has assumed the policy statements still apply to compassionate release motions brought under the FSA and utilizes USSG § 1B.13, Notes 1(A)-(D) to guide its analysis. *See, e.g., Muhs*, 2021 WL 534517, at *3.

Rouillard contends that the current COVID-19 pandemic, his mental health disorder, and his rehabilitation efforts satisfy the "extraordinary and compelling reasons" standard under 18 U.S.C. § 3582(c)(1)(A)(i). Docket 37 at 1319. Therefore, the court will analyze his circumstances under the medical conditions category, USSG § 1B1.13 Note 1(A), the family circumstances category, USSG § 1B1.13 Note 1(B), and the catch-all provision, USSG § 1B1.13 Note 1(D).

Assuming the court's discretion to consider compassionate release is at least as broad as the outdated policy statement of the Sentencing Commission, Rouillard has failed to show that his reasons for release rise to the level of "extraordinary and compelling" circumstances justifying a reduction in sentence.

### A.     Medical Conditions Category, Note 1(A)

As relevant here, the medical conditions category applies when the defendant is suffering from a serious physical or medical condition that substantially diminishes his ability to provide self-care within a correctional facility and from which he is not expected to recover. USSG § 1B1.13 cmt. n.1(A)(ii)(I).

COVID-19 appears to pose a particular risk for individuals with certain existing health conditions. The Centers for Disease Control and Prevention (CDC) updated its current understanding of these risks. *See People with Certain Medical Conditions*, Ctrs. for Disease Control & Prevention (Feb. 25, 2022),

https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html. The CDC states individuals with the following conditions are more likely to become very sick with COVID-19: cancer, chronic kidney disease, chronic liver disease (such as alcohol-related liver disease, non-alcoholic fatty liver disease, autoimmune hepatitis, and cirrhosis), chronic lung diseases (including moderate to severe asthma, bronchiectasis, bronchopulmonary dysplasia, chronic obstructive pulmonary disease (COPD), emphysema, chronic bronchitis, interstitial lung disease, idiopathy pulmonary fibrosis, pulmonary embolism, and pulmonary hypertension), cystic fibrosis, dementia or other neurological conditions, diabetes (type 1 or type 2), having certain disabilities (such as ADHD, cerebral palsy, birth defects, intellectual and developmental disabilities, learning disabilities, spinal cord injuries, or Down syndrome), heart conditions (such as heart failure, coronary artery disease, cardiomyopathies, or hypertension), HIV infection, immunocompromised state (having chemotherapy or a solid organ transplant), mental health conditions (having mood disorders, including depression, and schizophrenia spectrum disorders), being overweight or obese, partaking in little or no physical activity, pregnancy, sickle cell disease or thalassemia, being a current or former smoker, having a solid organ or blood stem cell transplant, stroke or cerebrovascular disease, substance abuse disorders (such as alcohol, opioid, or cocaine use disorder), and tuberculosis. *Id.*

      The court has reviewed the medical records submitted in this case. Rouillard suffers from myopia, an unspecified disorder of refraction and accommodation, antisocial personality disorder, migraines, astigmatism, and a teeth disorder.

Docket 37 at 31. Additionally, he is prescribed bupropion[2] and naproxen by his physician and takes several over the counter medications. *Id.* at 38-40. Rouillard takes naproxen to treat his headaches and bupropion to treat his antisocial personality disorder. *Id.* at 955, 1000. His medical records show that Wellbutrin has improved his mental health. *Id.* at 5, 766, 863, 872, 877, 887, 954, 959, 1006, 1024, 1097, 1110, 1168, 1172. At his latest appointment, on December 20, 2021, Rouillard stated he felt well and requested to his dose of Wellbutrin. *Id.* at 1. His other medical conditions have been categorized as resolved or in remission, which leads the court to believe that Rouillard is adequately healthy. *Id.* at 31-36.

The court has required a more particularized showing of a risk of serious illness from COVID-19 when evaluating compassionate release motions. Rouillard's health conditions do not prevent him from providing self-care in a correctional facility setting, and his medical conditions do not amount to extraordinary and compelling circumstances.

Additionally, the COVID-19 pandemic alone is insufficient to warrant early release. The BOP has made significant changes to correctional operations since the pandemic started in early 2020. *See COVID-19 Coronavirus*, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited Mar. 3, 2022). These include sanitary and safety measures, restrictions on movement, and visitation restrictions, among others. *Id.* The BOP has also transferred many thousands of inmates to home confinement. *See id.* Since March 26, 2020, 38,870 inmates have been placed

---

[2] Although bupropion is listed in Rouillard's medication summary, his physicians use the term "Wellbutrin" when referring to his bupropion prescription. Docket 37 at 5, 38, 766, 863, 887.

in home confinement. *Id.* These measures have led to a dramatic decrease in the total BOP population, which in turn has increased opportunities for social distancing and reduced the strain on BOP resources.

The court believes Rouillard's medical conditions are appropriately managed at USP Florence ADMAX, the facility is engaged in appropriate efforts to protect inmates against the spread of COVID-19, and the facility would act to treat any inmate who does contract COVID-19. The fact that USP Florence ADMAX had a COVID-19 outbreak does not negate such conclusions. The data for USP Florence ADMAX shows a COVID-19 outbreak that was ultimately contained. *See BOP Modified Operations*, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited Mar. 3, 2022). There were no deaths as a result, and 64 inmates have recovered. *Id.* This persuades the court that USP Florence ADMAX has acted appropriately to treat inmates who do contract COVID-19. The court believes the facility will continue to appropriately treat inmates who do so.

The BOP's vaccination program for staff and inmates is another protective measure warranting consideration in this stage of the COVID-19 pandemic. The BOP has implemented a COVID-19 vaccination plan to protect inmates and staff and limit the transmission of COVID-19 within the facilities. *See id.* As of March 3, 2022, 302,260 doses have been administered systemwide. *Id.* At FCC Florence, 541 staff and 1,923 inmates were fully inoculated as of March 3, 2022. *Id.* Rouillard received his first dose of the Moderna COVID-19 vaccine on March 10, 2021, and his second dose on April 5, 2021. Docket 37 at 37. Rouillard achieved full

vaccination status on April 19, 2021.[3] *See id.*

In light of the above, the court finds Rouillard's circumstances do not clear the high bar necessary to warrant compassionate release for "extraordinary and compelling reasons" under 18 U.S.C. § 3582(c)(1)(A)(i).

### B.   Catch-all Category, Note 1(D)

The catch-all category in Note 1(D) does not result in a different outcome. The catch-all category allows for release if there are extraordinary and compelling reasons other than, or in combination with, those identified in 1(A) through 1(C). USSG § 1B1.13, cmt. n.1(D). Even after considering Rouillard's sobriety, the court is not convinced that "extraordinary and compelling reasons" exist to release him from custody early.

### III.   Sentencing Factors of § 3553(a)

The 3553(a) sentencing factors further show that compassionate release is not warranted. Rouillard pleaded guilty to carjacking in violation of 18 U.S.C. § 2119. Rouillard was released from state custody on April 28, 2007 and accompanied his cousin to a party. PSR ¶ 10. Shortly upon arriving at his cousin's residence, Rouillard attempted to rape his cousin. *Id.* ¶ 11. When he failed, Rouillard grabbed the keys to her vehicle and fled the scene. *Id.* The victim's brother found her injured with cuts on her forehead, hands, forearm, and bruising and swelling on her back and shoulders. *Id.* Meanwhile Rouillard's stolen vehicle ran out of gas, so

---

[3] The CDC states that, "If you get a COVID-19 vaccine that requires two shots, you are considered fully vaccinated two weeks after your second shot." *See Understanding How COVID-19 Vaccines Work*, Ctrs. for Disease Control & Prevention (Feb. 24, 2022), https://www.cdc.gov/coronavirus/2019-ncov/vaccines/different-vaccines/how-they-work.html.

he pulled over on the side of the road. *Id.* ¶ 12. A woman eventually pulled over and offered to jump his vehicle. *Id.* Upon accepting her help, Rouillard grabbed her out of the vehicle and threw her into the backseat through the back driver's side door. *Id.* He assaulted her with what the victim believed was a glass bottle and he attempted to rape her. *Id.* The victim was 90 years of age. *Id.* ¶¶ 12, 14.

After the assault, Rouillard stole the victim's vehicle and headed to Eagle Butte where law enforcement was made aware of Rouillard's actions. *Id.* ¶ 13. A pursuit unfolded with the defendant driving at a rate of over one hundred miles per hour. *Id.* Rouillard managed to elude state law enforcement, but a tribal police officer managed to locate Rouillard. *Id.* Later, a short foot pursuit ensued, and Rouillard was finally apprehended. *Id.* The victim suffered permanent disfigurement due to the wounds she received from the attack. *Id.* ¶ 14.

The total offense level was calculated as 34 and Rouillard was in criminal history category V. *Id.* ¶¶ 32, 40-42. As a result, the guideline range was 235 to 293 months in custody. *Id.* at ¶ 64. The court sentenced Rouillard within his guideline range to 260 months in custody. Docket 30 at 2. After careful consideration, the court concludes Rouillard's sentence of 260 months continues to be appropriate for the seriousness of the crime to which he pleaded guilty.

### III.   Appointment of Counsel

Rouillard also moved for appointment of counsel. Docket 34. Under the court's Amended Standing Order 20-06, the Federal Public Defender's (FPD) Office was appointed to represent Rouillard. After a review of his motion, the FPD determined that it would not supplement Rouillard's initial filing. Thus, the motion

for appointment of counsel is denied as moot.

## CONCLUSION

Rouillard has failed to satisfy the extraordinary and compelling reason standard.

Thus, it is ORDERED:

1. That the defendant's motion for compassionate release under the First Step Act (Docket 33) is denied.

2. That Rouillard's motion for appointment of counsel (Docket 34) is denied as moot.

Dated March 4, 2022.

BY THE COURT:

/s/ Karen E. Schreier
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE